**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1) UCK AIRPORTS 1, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **(1) MCAFEE & TAFT, P.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

UCK Airports 1 LLC ("UCK" or "Plaintiff") files this Original Complaint against McAfee & Taft, a Professional Corporation ("McAfee", "Escrow Agent" or "Defendant") and alleges as follows:

## PRELIMINARY STATEMENT

1. UCK seeks to recover $6,000,000 in escrowed funds that have been wrongfully retained by McAfee in a flagrant breach of McAfee's contractual and fiduciary duties.

2. McAfee agreed to serve as the Escrow Agent for a transaction between UCK and CSDS Asset Management LLC ("CSDS"). On April 21, 2026, the three parties agreed to Escrow Terms & Wire Instructions (the "Escrow Agreement") which outline and establish McAfee's duties. The Escrow Agreement expressly refers to the Letter of Intent dated April 13, 2026 between CSDS and UCK (the "LOI Agreement") which contemplated UCK's purchase of six Airbus A320 aircraft with manufacturer's serial numbers 7635, 7679, 7724, 8614, 8659 and 8632 (the "Aircraft") from CSDS, as Seller.

3. The rights and duties of both UCK and McAfee are unambiguous under the Escrow Agreement. All parties "agreed and acknowledged that the Purchaser [UCK] is entitled to issue a Funds Disbursement Instruction which directs the return of any or all of the Escrow Funds to the

Purchaser" under any one of six conditions, including (1) a failure by UCK and CSDS to agree to the terms of a subsequent Purchase Agreement (as defined in the Escrow Agreement), or (2) the expiration of a certain provided date, known as the Long Stop Date.

4. The Purchase Agreement was never executed. The Long Stop Date, which all parties agree was June 15, 2026, has come and gone. As such, UCK issued a Funds Disbursement Instruction on August 30, 2026, in full compliance with the terms of the Escrow Agreement, for the return of its $18,600,000 deposit (the "Deposit") which was being held by McAfee in escrow.

5. McAfee failed and refused to disburse the Deposit in accordance with UCK's instructions and the Escrow Agreement. McAfee spurned its fiduciary and contractual duties by contending that it cannot release funds without consent of *both* UCK and CSDS. The plain text of the Escrow Agreement directly contradicts McAfee's contention. There is no basis for the withholding of funds.

6. After discussions, and only upon CSDS's consent, McAfee agreed to release $12,600,000 of the Deposit to UCK. McAfee has wrongfully retained the remaining $6,000,000. McAfee's intentional, unjustified retention of funds constitutes a breach of contract, breach of fiduciary duty, and conversion of property. UCK brings this action to recover the wrongly retained funds.

## **PARTIES**

7. UCK Airports 1 LLC is a company registered under the laws of the Qatar Financial Centre with a principal place of business at Newoon LLC, Office No. 103, Reg-3, Floor No. 1, Regus Business Centre, No. 67, Doha, Qatar.

8. McAfee & Taft is an Oklahoma professional corporation with a principal place of business at Two Leadership Square, 211 N Robinson Ave, Oklahoma City, OK 73102.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties and, as described below, the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has specific personal jurisdiction over McAfee as a corporation with its principal place of business in Oklahoma.

11. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) as McAfee is a resident of this District. Venue is likewise appropriate under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to these claims, namely the negotiation and execution of the Escrow Agreement, occurred in this District.

## BACKGROUND

### I. UCK and CSDS Enter the LOI Agreement

12. UCK is a private company which develops and expands both international airports and international airlines. Following the decision by Spirit Airlines to cease operations, CSDS, an "aviation trading company specializing [in] selling and leasing of commercial aircraft," approached UCK regarding an opportunity to purchase the Aircraft.

13. On April 13, 2026, UCK and CSDS entered the LOI Agreement. The LOI Agreement contemplated the execution of a "subsequent, mutually agreeable, definitive aircraft purchase agreement." As the LOI Agreement was designed to be a temporary, intermediate step on the path to a final Purchase Agreement, the parties agreed to a date upon which the LOI Agreement would automatically terminate, known as the Long Stop Date. Section 5A of the LOI Agreement provides that, "if the Aircraft Purchase Agreement has not been executed and/or the

transaction has not progressed to Closing on or before May 15, 2026 ("Long Stop Date"), this LOI shall automatically terminate."

14. Under the LOI Agreement, UCK was obligated to deposit $18,600,000 in an Escrow Account with McAfee.

15. The LOI Agreement, not once, but twice over, provides that this Deposit would be returned to UCK, as Buyer, in the event that the Purchase Agreement was not executed prior to the Long Stop Date. Section 4 provides that "the Deposit shall be immediately refunded to the Buyer (within three (3) business days) upon the earliest occurrence of any of the following…expiry of the Long Stop Date." And Section 5A reiterates this same black-and-white principle, stating the "Deposit shall be refunded by the Seller to the Buyer" if the Purchase Agreement is not executed prior to the Long Stop Date.

## II. UCK, CSDS, and McAfee Enter the Escrow Agreement.

16. On April 21, 2026, approximately one week after the execution of the LOI Agreement, UCK, CSDS, and McAfee entered into the Escrow Agreement. Attached as **Exhibit 1**. The Escrow Agreement begins with express reference to the LOI Agreement. *Id.* at § 1.

17. The Escrow Agreement confirmed the black-and-white mechanics for the return of the Deposit. Under the Escrow Agreement, UCK, as Purchaser, is "entitled to issue a Funds Disbursement Instruction which directs the return of any or all of the Escrow Funds to the Purchaser in any of the following circumstances…expiry of the Long Stop Date (as such term is defined in the LOI)." *Id.* at § 2. The Escrow Agreement provides no discretion to the Escrow Agent in the event of such an instruction; the Agent "***shall comply*** with any Funds Disbursement Instruction…and such Escrow Funds shall be returned to the Purchaser within three (3) Oklahoma City business days." *Id.*

18. On April 28, 2026, UCK deposited $18,600,000 into the Escrow Account in compliance with all applicable terms of both the LOI Agreement and Escrow Agreement.

## III. McAfee Refuses to Comply with the Funds Disbursement Instruction after the Purchase Agreement is Not Executed.

19. After the Escrow Agreement was executed, UCK and CSDS attempted to negotiate the Purchase Agreement. As negotiations continued, the parties agreed to extend the Long Stop Date from May 15, 2026, to June 15, 2026. **Attached as Exhibit 2**.

20. However, by August, the negotiations reached an impasse and the Purchase Agreement was never executed. No agreement, of any kind, was ever executed for the purchase of any aircraft between UCK and CSDS.

21. On August 30, 2026, UCK issued a Funds Disbursement Instruction in compliance with the Escrow Agreement, requesting the return of the $18,600,000 Deposit. **Attached as Exhibit 3.** Pursuant to the plain language of the Escrow Agreement, McAfee was required to comply with the Funds Disbursement Instruction within three business days. Ex. 1 § 2.

22. McAfee refused to comply and provided a one-sentence justification for its egregious breach. On September 8, 2026, McAfee informed UCK that "CSDS continues to disagree that they are in breach and continues to refuse to release claim on the deposit." **Attached as Exhibit 4.**

23. McAfee's statement is a misreading of its obligations under the Escrow Agreement and factually incorrect. First, a "breach" is not required for the release of the Deposit. All parties "agreed and acknowledged" that UCK is entitled to "the return of any or all of the Escrow Funds" upon the "expiry of the Long Stop Date" or "at any time prior to the transfer of title to the Equipment to the Purchaser." Ex. 1 § 2. There is no dispute that the Long Stop Date of June 15, 2026, has expired. There is no dispute that UCK, as Purchaser, has not received the transfer of title

to any Equipment (as defined in the Escrow Agreement) or aircraft. Therefore, UCK is entitled to the return of the Deposit.

24. Moreover, there are no plausible duties that UCK could even arguably have breached. As outlined above, the parties never executed a Purchase Agreement. And, under the Escrow Agreement, UCK's only affirmative duties are to (1) make the Deposit, and (2) comply with the form of disbursement instructions, both of which it undoubtedly has done. No breach has occurred.

25. Second, the fact that CSDS "refuse[s] to release claim on the deposit" is wholly irrelevant. The Escrow Agreement does not require CSDS' consent for the return of the Deposit. *See* Ex. 1. In fact, the agreement expressly provides the opposite. Ex. 1 § 2 ("It is agreed and acknowledged that a Funds Disbursement Instruction may be submitted ***by the Purchaser at any time*** following the execution of these Escrow Terms."). McAfee's stated grounds for its refusal to comply with the Funds Disbursement Instruction are inapposite.

26. The only ground under which McAfee may refuse a funds disbursement instruction is inapplicable here. Section 5 of the Escrow Agreement states, "in the event of any disagreement between any of the Parties ***regarding these Escrow Terms***…the Escrow Agent may, at its option, refuse to comply with any claims or demands on it." Ex. 1 § 5. There is no such dispute here. Neither CSDS nor McAfee has identified any ambiguity in the language of the Escrow Agreement because there is none.

27. The only possible "dispute" (if one could call it that) between UCK and CSDS is whether the Purchase Agreement was signed. CSDS represented to McAfee that "both parties fully executed the PA" while simultaneously acknowledging that the PA was "missing another signature." **Attached as Exhibit 5**. UCK promptly clarified the confusion in CSDS's

representations. On September 10, 2026, UCK explained to McAfee that while the "first purchaser signature" to the contemplated Purchase Agreement was provided, it was "to be held strictly in escrow." **Attached as Exhibit 6**. UCK provided the supporting email in which UCK emphasized the Purchase Agreement was only "partly executed" and that the Purchase Agreement was to be "held strictly in escrow." *Id.* There is no genuine dispute that the Purchase Agreement was not executed by UCK. Even if there were, such a dispute does not provide support for McAfee's actions. There is certainly no dispute "regarding the Escrow Terms." Ex. 1 § 5. And, even if any Purchase Agreement was executed (it was not), McAfee would still be obligated to return the Deposit. Ex. 1 § 2.

28. UCK has requested the return of the Deposit on at least four occasions: via the Funds Disbursement Instruction sent on August 30, 2026, and emails on September 6, 2026, September 8, 2026, and September 10, 2026. McAfee refuses to comply.

29. Instead, McAfee has exhibited further infidelity to its obligations under the Escrow Agreement by releasing $12,600,000 of the Deposit and retaining the remaining $6,000,000. Without citation to any provision of either the LOI Agreement or Escrow Agreement, CSDS instructed McAfee to retain $6,000,000 as CSDS's "liquidated damages." **Ex. 5**. There are simply no grounds for this baseless claim by CSDS.

30. As of the date of this filing, $6,000,000 of the initial $18,600,000 is being wrongfully retained in the Escrow Account (as defined in the Escrow Agreement).

## COUNT I
## Breach of Contract – Escrow Agreement

31. UCK incorporates and realleges paragraphs 1-30 as though fully set forth.

32. On April 21, 2026, UCK, CSDS, and McAfee entered into the Escrow Agreement. UCK performed all of its obligations under the Escrow Agreement, including by depositing $18,600,000 into the Escrow Account in a timely manner.

33. The Escrow Agreement provides that UCK, as Purchaser, is "entitled to issue a Funds Disbursement Instruction which directs the return of any or all of the Escrow Funds to the Purchaser in any of the following circumstances…expiry of the Long Stop Date (as such term is defined in the LOI); or at any time prior to the transfer of title to the Equipment to the Purchaser under the Purchase Agreement." Ex. 1 § 2.

34. McAfee has breached the Escrow Agreement by failing to return the Deposit following the Funds Disbursement Instruction provided by UCK on August 30, 2026.

35. As a direct and proximate result of McAfee's breach, UCK has suffered damages in an amount to be determined at trial, but no less than the $6,000,000 of the Deposit which remains in the Escrow Account.

**COUNT II**
**Declaratory Judgment – 28 U.S.C. §§ 2201-2202**

36. UCK incorporates and realleges paragraphs 1-30 as though fully set forth.

37. An actual, justiciable controversy exists between UCK, on the one hand, and McAfee, on the other, regarding Plaintiff's entitlement to the immediate return of the Deposit and the parties' respective rights and obligations under the Escrow Agreement.

38. Plaintiff is entitled to a judicial declaration that: (a) no Purchase Agreement was executed prior to the expiration of the Long Stop Date on June 15, 2026 (or at all), and (b) under the terms of the Escrow Agreement, McAfee is obligated to refund the full amount of the Deposit to UCK immediately.

39. A judicial declaration is necessary and appropriate at this time so that McAfee may ascertain its obligations under the Escrow Agreement and the Deposit may be promptly refunded.

**COUNT III**
**Conversion**

40. UCK incorporates and realleges paragraphs 1-30 as though fully set forth.

41. Plaintiff has a present and immediate right to the possession of the portion of the Deposit that remains in the Escrow Account (as defined in the Escrow Agreement).

42. McAfee has exercised wrongful dominion over the funds remaining in the Escrow Account by wrongfully maintaining the possession of the funds.

43. UCK has demanded the return of the property on multiple occasions, including but not limited to the Funds Disbursement Instruction sent on August 30, 2026, and emails dated September 6, 2026, September 8, 2026, and September 10, 2026.

44. As a direct and proximate result of this wrongful exercise of dominion over the Deposit, UCK has been damaged in an amount to be determined at trial, but no less than the $6,000,000 of the Deposit which remains in the Escrow Account.

**COUNT IV**
**Breach of Fiduciary Duty**

45. UCK incorporates and realleges paragraphs 1-30 as though fully set forth.

46. As Escrow Agent and custodian over UCK's $18,600,000 Deposit, UCK placed a high degree of trust and confidence upon McAfee. A special relationship existed by which McAfee was obligated to safeguard and properly administer the Deposit, creating a fiduciary duty between the parties. An escrow agent charged with the safekeeping of another's funds owes a fiduciary duty to the owner of those funds under Oklahoma law. A fiduciary relationship arises whenever trust and confidence are reasonably placed by one party in the integrity and loyalty of another and

the other knowingly accepts that trust and undertakes to act on the first party's behalf, and Oklahoma courts have specifically held that where an entity is made custodian of another's funds under an agreement, express or implied, to safely hold and disburse those funds at the true owner's direction, a fiduciary relationship results.

47. McAfee breached its fiduciary duty to UCK by wrongfully retaining the Deposit. McAfee has no good-faith grounds for its refusal to return the Deposit. McAfee has abandoned its fiduciary duty and fidelity to the Escrow Agreement by withholding funds without a basis for doing so.

48. As a direct and proximate result of McAfee's breach, UCK has been damaged in an amount to be determined at trial, but no less than the $6,000,000 of the Deposit which remains in the Escrow Account.

## REQUEST FOR RELIEF

Plaintiff UCK Airports 1 LLC respectfully requests that this Court:

A. Enter Judgment in Plaintiff's favor on each of its claims against Defendant;

B. Enter a Declaratory Judgment that:

i. No Purchase Agreement was executed prior to the expiration of the Long Stop Date on June 15, 2026 (or at all);

ii. Pursuant to the terms of the LOI Agreement and Escrow Agreement, the Escrow Agent is obligated to refund the full amount of the Deposit to UCK immediately.

C. Award Plaintiff compensatory damages according to proof;

D. Award Plaintiff such punitive damages as are just;

E. Award Plaintiff pre-Judgment and post-Judgment interest;

F. Award Plaintiff its reasonable attorneys' fees and costs incurred in connection with this Action; and

G. Grant such other and further relief as justice may require.

Dated: September 25, 2026

Respectfully submitted,

By: */s/ Tadd J.P. Bogan*

Tadd J.P. Bogan, OBA# 20962
Jones, Gotcher & Bogan, P.C.
15 East Fifth Street, Suite 3800
Tulsa, Oklahoma 74103
Telephone: (918)581-8200
Facsimile: (918)583-1189
E-Mail: tbogan@jgbok.com

and

Sean Gorman (*pro hac vice* forthcoming)
sean.gorman@whitecase.com
Andrew Jacobs (*pro hac vice* forthcoming)
andrew.jacobs@whitecase.com
WHITE & CASE LLP
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9643
Facsimile: (713) 496-9701

ATTORNEYS FOR PLAINTIFF UCK AIRPORTS 1 LLC