**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UCK AIRPORTS 1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:26-cv-02665-PRW |
| | ) | |
| MCAFEE & TAFT, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MCAFEE & TAFT'S MOTION TO DISMISS AND BRIEF IN SUPPORT OR, IN THE ALTERNATIVE, TO STAY**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), McAfee & Taft A Professional Corporation [1] ("McAfee & Taft" or "Defendant") hereby submits its Motion to Dismiss all claims asserted by Plaintiff UCK Airports 1 LLC in its Complaint [Doc. No. 1] or, in the alternative, to stay these proceedings. In support of its Motion, McAfee & Taft states as follows:

## INTRODUCTION

UCK Airports 1 LLC's ("UCK" or "Plaintiff") Complaint asks this Court to impose liability on an escrow agent for doing exactly what the governing Escrow Terms permit: preserving disputed funds until the competing claimants resolve their disagreement or a court adjudicates their rights. UCK quotes Section 2 of the Escrow Terms,[2] but its

1. The Complaint incorrectly identifies Defendant as "McAfee & Taft, P.C." Defendant's correct legal name, however, is McAfee & Taft A Professional Corporation.

2. When evaluating a motion to dismiss under Rule 12(b)(6), the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)

arguments omit the provision written for the present circumstance. Section 5 provides that, in the event of any disagreement between the parties regarding the Escrow Terms, or in the event the Escrow Agent, in good faith, is in doubt as to what action should be taken, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it so long as such disagreement continues or such doubt exists. [Doc. No. 1-1] Compl. Ex. 1 § 5.

UCK does not dispute that Section 5 permits the Escrow Agent to refuse a Funds Disbursement Instruction. The Complaint itself acknowledges that Section 5 supplies a ground on which "McAfee may refuse a funds disbursement instruction." [Doc. No. 1] Compl. ¶ 26. But when UCK quotes Section 5, it replaces the provision's second, independent trigger with an ellipsis. *See id.* The omitted language provides that the Escrow Agent may also refuse to act "in the event the Escrow Agent, in good faith, is in doubt as to what action should be taken hereunder." *Compare* [Doc. No. 1] Compl. ¶ 26, *with* [Doc. No. 1-1] Compl. Ex. 1 § 5. UCK's claims depend on reading that language out of the contract.

UCK's own allegations trigger these provisions. The Complaint alleges that CSDS continues to claim the remaining $6,000,000, asserts that amount as liquidated damages, and instructed McAfee & Taft not to release it. UCK insists the money must be paid to UCK. Whatever the ultimate merits of those competing positions, they constitute a present

---

(citations omitted). Here, Plaintiff attached the Escrow Terms and the parties' related correspondence to its Complaint as Exhibits 1 through 6 and relies on them throughout as the basis for its claims. *See* [Doc. No. 1] Compl. ¶¶ 16–17, 19, 21–23, 25–27, 29, 33 & Exs. 1–6 [Doc. Nos. 1-1 to 1-6]. Accordingly, the Court may consider these exhibits in their entirety.

disagreement over the Escrow Terms and create good-faith doubt about payment. Section 5 authorizes retention of the funds and forecloses the essential breach or wrongful act required by each claim against McAfee & Taft.

The Court should dismiss the Complaint. Alternatively, the Court should stay this case pending resolution of the underlying entitlement dispute between UCK, CSDS, and Benedict Sirimanne in the Southern District of New York (the "New York Action"). UCK filed that action the same day as this one and asked the New York court to decide who is entitled to the very same $6,000,000 and whether CSDS may instruct the Escrow Agent to withhold it. A limited stay will preserve the funds, prevent conflicting rulings, and avoid forcing a neutral stakeholder to defend duplicative litigation while the claimants litigate entitlement elsewhere.

In addition, a temporary restraining order was entered against CSDS on October 21, 2026, which by its terms applies to McAfee & Taft. A copy of the TRO, entered by the United States Bankruptcy Court for the Southern District of New York, is attached as Exhibit 2. In summary, the TRO prevents CSDS and various related parties from moving or disbursing any funds or property in which CSDS may have an interest. [3]

---

3. A copy of the docket sheet for the New York action is attached as Exhibit 1. In considering a motion to dismiss, a court may take judicial notice of documents filed in other courts to establish the existence of those proceedings and filings. *See United States v. Guinn*, No. 24-CR-131, 2024 WL 4491585, at *2 (E.D. Okla. Oct. 15, 2024) (citing *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361–62 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020)). Accordingly, the Court may take judicial notice of the New York docket sheet and the bankruptcy court's temporary restraining order, attached as Exhibits 1 and 2, respectively, to establish the existence of those proceedings and the orders entered therein.

That said, McAfee & Taft stands ready to disburse the $6,000,000 upon order of the Court or to interplead the funds under the Escrow Terms, subject to not violating the existing TRO.

## BACKGROUND

### A. THE ESCROW TERMS ADDRESS BOTH DISBURSEMENT INSTRUCTIONS AND DISPUTED CLAIMS

UCK alleges that it agreed to purchase six aircraft from CSDS and deposited $18.6 million with McAfee & Taft as Escrow Agent. [Doc. No. 1] Compl. ¶¶ 2, 12–18. UCK contends that no purchase agreement was executed before the extended Long Stop Date and that it later delivered a Funds Disbursement Instruction. *Id.* ¶¶ 19–21. McAfee & Taft later released $12.6 million, leaving $6 million in the escrow account. *Id.* ¶¶ 6, 29–30.

The Escrow Terms are attached to and repeatedly quoted in the Complaint. *Id.* ¶¶ 2–3, 16–17; [Doc. No. 1-1] Compl. Ex. 1. Section 2 identifies circumstances in which UCK may issue a Funds Disbursement Instruction. But Section 5 separately governs disagreement and doubt. It states in part:

> In the event of any disagreement between any of the Parties regarding these Escrow Terms, or in the event the Escrow Agent, in good faith, is in doubt as to what action should be taken hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any person for its good faith failure or refusal to act; and the Escrow Agent shall be entitled to continue to so refrain from acting until (i) the rights of the Parties shall have been fully and finally adjudicated by a court of competent jurisdiction, or (ii) all differences shall have been adjusted and all doubt resolved to the satisfaction of the Escrow Agent by agreement among all

> of the interested persons, and the Escrow Agent shall be notified thereof in writing signed by all such persons and entities . . . .

[Doc. No. 1-1] Compl. Ex. 1 § 5.

### B. The Complaint Alleges a Live Dispute Between UCK and CSDS

The Complaint expressly pleads the disagreement Section 5 anticipates. McAfee & Taft informed UCK that "CSDS continues to disagree that they are in breach and continues to refuse to release claim on the deposit." [Doc. No. 1] Compl. ¶ 22. UCK alleges that CSDS refused consent to release, *id.* ¶ 25; that CSDS claimed the purchase agreement had been executed, *id.* ¶ 27; and that CSDS directed McAfee & Taft to retain $6 million as liquidated damages, *id.* ¶ 29. UCK calls the dispute meritless, but it nonetheless alleges competing demands to the same funds.

### C. UCK Asks the New York Court to Decide the Same Entitlement Dispute

On September 25, 2026, UCK also filed the New York Action against CSDS and Benedict Sirimanne. *UCK Airports 1 LLC v. CSDS Asset Management LLC*, No. 1:26-cv-08420-AT (S.D.N.Y.). The original complaint in that action alleges that $6 million remains in the same escrow account and asserts breach of the LOI and Escrow Terms, declaratory judgment, conversion, and fraudulent inducement. N.Y. Compl. ¶¶ 31–62. Its declaratory count asks the New York court to determine UCK's entitlement to immediate return of the deposit and the parties' rights under both agreements. *Id.* ¶¶ 46–49. The prayer specifically asks for declarations that the Escrow Agent must return the deposit and that neither CSDS nor Sirimanne may obstruct return or instruct the Escrow Agent to withhold any amount. *Id.*, Prayer ¶ B(ii)–(iii).

### D. McAfee & Taft Must Comply with the TRO

Even if McAfee & Taft were permitted to tender the $6,000,000 to UCK, the TRO would prohibit it from doing so. Absent relief from the Bankruptcy Court or dissolution of the TRO, releasing the funds at UCK's request would risk McAfee & Taft being held in contempt of court.

## STANDARD OF REVIEW

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), the Court's inquiry at the pleading stage is whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded factual allegations as true and construes reasonable inferences in the plaintiff's favor. *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). But "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### B. A Limited Stay

A district court has the power to stay proceedings pending before it and to control its docket for the purpose of "economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Pet Milk Co. v. Ritter*,

323 F.2d 586, 588 (10th Cir. 1963) ("The granting of the stay ordinarily lies within the discretion of the district court."). While the factors courts consider in deciding whether to grant a stay may be named or packaged differently across jurisdictions, the substance of the factors is largely the same. *Compare Alzheimer's Inst. of Am. v. Comentis, Inc.*, No. CIV-09-1366-F, 2010 WL 11508734, at *2 (W.D. Okla. Dec. 17, 2010) ("Factors relevant to the court's decision are (1) whether a stay would promote judicial economy; (2) whether a stay would avoid confusion and inconsistent results; and (3) whether a stay would unduly prejudice the parties or create undue hardship."), *with String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (considering "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest").

When two federal suits are pending, the district court cannot resort to a rigid mechanical solution. *Wakaya Perfection, LLC v. Youngevity Internat'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) (citations omitted). As a starting point, courts should apply the first-to-file rule. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982). Under this rule, courts consider three factors: (1) chronology of events; (2) the similarity of the parties involved; and (3) the similarity of the issues or claims at stake. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). But these factors are not exhaustive, and other equitable factors may

bear on the inquiry. *See id.* (listing inequitable conduct, bad faith, anticipatory suits, and forum shopping as equitable considerations).

## ARGUMENT

### I. THE ESCROW TERMS DEFEAT EVERY CLAIM AGAINST MCAFEE & TAFT

#### A. SECTION 5 AUTHORIZED MCAFEE & TAFT TO PRESERVE THE FUNDS DURING THE ADMITTED DISPUTE

Oklahoma law gives effect to the parties' written allocation of rights and duties. A clear contract is construed as a matter of law from its four corners, and disagreement between litigants does not create ambiguity. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 2003 OK 5, ¶¶ 12, 14–15, 63 P.3d 541, 545. The whole contract must be read together so that each clause has effect. 15 O.S. § 157. The Court may not enforce Section 2 while reading Section 5 out of the agreement.

Yet that is precisely what the Complaint asks the Court to do. UCK alleges that "[t]he only ground under which McAfee may refuse a funds disbursement instruction" is Section 5, which UCK quotes as applying "in the event of any disagreement between any of the Parties ***regarding these Escrow Terms*** . . . ." [Doc. No. 1] Compl. ¶ 26 (emphasis in original). That allegation is significant in two respects. First, it confirms what the contract makes plain: Section 2's directive that the Escrow Agent "shall comply" with a Funds Disbursement Instruction is not absolute, and Section 5 authorizes the Escrow Agent to refuse such an instruction when its conditions are met. Second, UCK's quotation omits half of Section 5. The ellipsis in Paragraph 26 removes the clause providing that the Escrow Agent may also refuse to act "in the event the Escrow Agent, in good faith, is in doubt as

to what action should be taken hereunder." [Doc. No. 1-1] Compl. Ex. 1 § 5. UCK's remaining allegations repeat the same omission, arguing only that there is no dispute "regarding the Escrow Terms." [Doc. No. 1] Compl. ¶ 27.

UCK cannot plead around contract language by leaving it out. Indeed, UCK's own counsel acknowledged the omitted clause before this suit was filed, describing Section 5 as applying where "(i) there is any disagreement between the parties regarding 'these Escrow Terms' or (ii) where the Escrow Agent, in good faith, is in doubt as to what action should be taken under the Escrow Terms." [Doc. No. 1-6] Compl. Ex. 6 at 3. Because the Escrow Terms attached to the Complaint control over UCK's selective characterization of them, the Court should read Section 5 as written—both triggers included.

Read as written, Section 5 squarely covers what the Complaint alleges. First, UCK and CSDS disagree regarding the Escrow Terms and entitlement to the remaining funds. UCK demands payment; CSDS claims the $6 million as liquidated damages and refuses to release its claim. [Doc. No. 1] Compl. ¶¶ 22, 25, 27, 29. Second, those conflicting demands necessarily create good-faith doubt about what the Escrow Agent should do. Section 5 uses the disjunctive "or," so either condition is sufficient.

Once triggered, Section 5 grants the Escrow Agent the option to "refuse to comply with any claims or demands on it" and to refrain from other action while the disagreement or doubt continues. [Doc. No. 1-1] Compl. Ex. 1 § 5. It also defines the endpoint: final adjudication of the parties' rights or a signed agreement among all interested persons. *Id.* Neither event had occurred when UCK sued McAfee & Taft. Indeed, UCK filed the New York Action to obtain the adjudication Section 5 identifies.

UCK attempts to avoid Section 5 by alleging that the dispute lacks merit or does not concern the Escrow Terms. [Doc. No. 1] Compl. ¶¶ 26–27. But those are conclusions contradicted by UCK's detailed allegations and the New York complaint. Whether a purchase agreement was executed, whether the Long Stop Date ended the transaction, whether CSDS may claim liquidated damages, and whether UCK is entitled to immediate disbursement are disputes about rights and action under the Escrow Terms. Section 5 does not condition protection on the Escrow Agent predicting which claimant will ultimately prevail. It exists so the Escrow Agent need not make that prediction.

### B. THE BREACH-OF-CONTRACT CLAIM FAILS BECAUSE THE CHALLENGED RETENTION WAS CONTRACTUALLY AUTHORIZED

A breach-of-contract claim requires formation, breach, and damages caused by the breach. *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843. Count I fails at breach. The conduct UCK challenges—declining competing demands while the dispute remains unresolved—is conduct Section 5 expressly permits. A party does not breach a contract by exercising a right the contract grants.

Section 4 of the Escrow Terms independently limits the Escrow Agent's liability. It provides that the Escrow Agent "shall not be liable for any action taken or omitted to be taken by it while acting in good faith and in the exercise of its judgment under these Escrow Terms," except for "its own willful, criminal misconduct or gross negligence." [Doc. No. 1-1] Compl. Ex. 1 § 4. The Complaint alleges neither. Accordingly, the contract claim should be dismissed.

### C. The Declaratory-Judgment Claim Cannot Create a Present Payment Duty Contrary to Section 5

Count II asks this Court to declare that McAfee & Taft must pay UCK immediately. [Doc. No. 1] Compl. ¶¶ 36–39. But the parties agreed that McAfee & Taft may refrain until the interested parties resolve their differences or a court finally adjudicates their rights. *See* [Doc. No. 1-1] Compl. Ex. 1 § 5 (authorizing the Escrow Agent to refrain from acting until the parties' rights are finally adjudicated or all differences and doubts are resolved by written agreement). A declaratory claim does not authorize the Court to rewrite that condition. Because the pleaded facts show an unresolved dispute, UCK has not stated a present right to a declaration of immediate payment against McAfee & Taft.

The New York Action confirms the prematurity of Count II. There, UCK seeks the adjudication of UCK's and CSDS's rights that Section 5 requires. The actual adverse claimant is a party there, but not here. Until that dispute is resolved, a declaration compelling the stakeholder to pay one claimant would defeat the contract's agreed dispute-resolution mechanism and expose McAfee & Taft to incompatible demands.

### D. The Conversion Claim Fails Because Retention Is Authorized and the Dispute Sounds in Contract

Conversion requires an "act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 12, 374 P.3d 820, 825 (citation omitted); *see also Welty v. Martinaire of Okla., Inc.*, 1994 OK 10, ¶ 6, 867 P.2d 1273, 1275. It does not lie merely to collect a debt arising under a contract. *Welty*, 1994 OK 10, ¶ 7, 867 P.2d at 1275. Here, the Escrow Terms authorize continued custody during the dispute. That possession is not

wrongful. And UCK's asserted right to payment exists, if at all, under the Escrow Terms. Count III cannot transform the parties' contract dispute into conversion.

### E. THE FIDUCIARY-DUTY CLAIM FAILS FOR THE SAME REASON: NO BREACH

A fiduciary-duty claim requires (1) a fiduciary relationship, (2) a duty arising out of that relationship, (3) a breach of the duty, and (4) damages proximately caused by the breach. *FDIC v. Grant*, 8 F. Supp. 2d 1275, 1299 (N.D. Okla. 1998); OUJI-CIV 26.1. "Before a plaintiff may proceed on a claim for breach of fiduciary duty the allegations in the complaint must be sufficient to allege the existence of such a duty." *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1192 (W.D. Okla. 2019).

Even assuming a fiduciary relationship, Count IV identifies no breached duty. Under Oklahoma law, a fiduciary relationship "is based on some form of agreement, either express or implied, from which it can be said the minds have been met to create a mutual obligation." *Grant*, 8 F. Supp. 2d at 1296 (quoting *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 942 (10th Cir. 1994)). UCK's own theory confirms the point: it alleges that McAfee & Taft became a fiduciary by agreeing "to safely hold and disburse" funds under an agreement. [Doc. No. 1] Compl. ¶ 46. Here, that agreement is the Escrow Terms, which define the escrow relationship and expressly provide that the Escrow Agent "shall not be or become liable in any way or to any person for its good faith failure or refusal to act" while a disagreement continues or doubt exists. [Doc. No. 1-1] Compl. Ex. 1 § 5; *see also id.* § 4. Safeguarding the funds while adverse claimants demand the same money is faithful to those terms, not a departure from them.

UCK's contrary assertion that McAfee & Taft "has no good-faith grounds" for retaining the funds, [Doc. No. 1] Compl. ¶ 47, is a bare conclusion the Court need not accept. *Twombly*, 550 U.S. at 555. It is also contradicted by UCK's own exhibits, which show CSDS asserting a claim to $6 million of the deposit as liquidated damages and threatening litigation if the parties did not agree. [Doc. No. 1-5] Compl. Ex. 5 at 3. UCK cannot recast contractually authorized restraint as disloyalty.

## II. Alternatively, the Court Should Stay This Case Pending Resolution of the New York Action

### A. The New York Action Will Resolve the Controlling Entitlement Dispute

The two actions substantially overlap. Both concern the same aircraft transaction, LOI, Escrow Terms, disbursement instruction, escrow account, and remaining $6 million. Both require deciding whether the purchase agreement was executed, whether the transaction failed or the Long Stop Date expired, whether CSDS has any right to the funds, and whether UCK is entitled to immediate payment. The New York Complaint goes further and asks for declarations directed to the precise issue here: whether CSDS may obstruct payment or instruct the Escrow Agent to withhold funds.

The parties overlap in the way that matters. UCK is the plaintiff in both actions. The New York Action includes CSDS and Sirimanne, who allegedly assert the adverse claim and instructed retention. This case includes McAfee & Taft, the stakeholder facing those competing demands. Exact identity is unnecessary. *Landis* confirms that a stay may await another action even when the parties are not the same and the issues are not identical. 299 U.S. at 254. Indeed, the relevant inquiry considers the similarity of the parties and issues,

rather than requiring their complete identity. *See Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789–90 (6th Cir. 2016).

Chronology is at most neutral because UCK commenced both actions on September 25, 2026. Although chronology is one consideration, it is not dispositive. *See Baatz*, 814 F.3d at 789. The remaining considerations strongly favor deference: the parties substantially overlap, the dispositive issues are the same, and the New York court can bind the actual claimants.

### B. A Stay Promotes Efficiency and Prevents Inconsistent Obligations Without Prejudicing UCK

Proceeding simultaneously would duplicate document discovery, depositions, expert work, and judicial analysis concerning the same agreements and funds. More importantly, separate adjudications could produce incompatible results—one court could determine CSDS has an enforceable claim while another orders McAfee & Taft to pay UCK. Section 5 was drafted to avoid forcing the Escrow Agent into that position.

A stay will not deprive UCK of a forum or access to the funds. UCK selected the New York forum, the funds remain preserved, and the New York court has entered a pretrial schedule. UCK can litigate entitlement directly against the party asserting the competing claim. If UCK prevails, the adjudication will supply the contractual predicate for disbursement; if CSDS prevails, an Oklahoma order compelling payment to UCK could not stand.

The requested stay is moderate. McAfee & Taft proposes that it last only until the Southern District of New York enters a district-court disposition resolving entitlement to

the remaining escrowed funds or the parties otherwise resolve that dispute.

### C. A STAY WILL ALSO PRESERVE MCAFEE & TAFT'S OBLIGATIONS UNDER THE TRO

As noted above, the TRO effectively prevents McAfee & Taft from disbursing the $6,000,000. A stay will also allow UCK to seek relief from the TRO if it is entitled to such relief.

## CONCLUSION

The Complaint and its controlling exhibit establish that McAfee & Taft acted within Section 5 while UCK and CSDS dispute entitlement to the escrowed funds. The Court should dismiss the Complaint. If dismissal is not granted, the Court should stay all proceedings until the New York Action resolves the competing claimants' rights, with ninety-day status reports and prompt notice of any dispositive ruling or settlement.

Respectfully submitted,

*/S/ M. Richard Mullins*

M. Richard Mullins, OBA No. 13329
Michael F. Lauderdale, OBA No. 14265
McAfee & Taft A Professional Corporation
Eighth Floor – Two Leadership Square
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
mike.lauderdale@mcafeetaft.com
richard.mullins@mcafeetaft.com

Mary Quinn-Cooper, OBA No. 11966
McAfee & Taft A Professional Corporation
Two West 2nd St., Suite 1100
Williams Tower II
Tulsa, Oklahoma 74103

Telephone: (918) 587-0000
Facsimile: (918) 599-9317
maryquinn.cooper@mcafeetaft.com
***ATTORNEYS FOR DEFENDANT***